**United States District Court**
**District of Massachusetts**

| | |
|---|---|
| **Mari Cartagenova, Kevin Mansfield and Abby Musick on behalf of themselves and all others similarly situated,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**Dotdash Meredith, Inc.,**<br><br>**Defendant.** | **Civil Action No. 25-11638-NMG** |

**MEMORANDUM & ORDER**

**GORTON, J.**

This case arises from a complaint filed by plaintiffs Mari Cartagenova, Kevin Mansfield and Abby Musick on their own behalf and on behalf of others similarly situated (collectively, "plaintiffs") alleging violations of the Video Protection Privacy Act ("VPPA") by defendant Dotdash Meredith, Inc. ("DDM" or "defendant"). Pending before the Court is defendant's motion to dismiss for lack of subject matter jurisdiction, or, in the alternative, failure to state a claim. Because this court does not have personal jurisdiction over defendant, the motion will be allowed.

## I. Jurisdictional Background

DDM is a digital and print publishing company incorporated in Delaware and headquartered in New York. DDM does not own

real estate, maintain offices or publish any brands in Massachusetts. Twenty-seven of its 3,100 employees reside in Massachusetts. For tax purposes, DDM estimates that 2.1% of its overall 2023 revenue emanated from costumers who reside in Massachusetts.

People and Entertainment Weekly (EW) are two of DDM's national publications. Their respective websites, people.com and ew.com (collectively, "the Websites"), are accessible nationwide to anyone with an internet connection and require no registration or subscription. The Websites allow a visitor to sign up for free digital newsletters on different topics in return for disclosure of his or her email address and, in the process, an IP address. DDM is able to approximate the location of its website visitors based upon the associated IP addresses, and it estimates that about 3% of its visitors and newsletter recipients are located in Massachusetts.

Plaintiffs allege that defendant's newsletters contain links to various videos on the Websites that, once clicked upon by the visitor, allows defendant to trace and share his or her interactions in violation of the VPPA.

Plaintiffs filed their complaint in June, 2025, and defendant moved to dismiss in August, 2025. Plaintiffs have timely opposed the motion.

## II. Motion to Dismiss for Lack of Jurisdiction

### A. Legal Standard

Plaintiffs bear the burden of establishing that personal jurisdiction exists over defendant. Rosenthal v. Bloomingdales.com, LLC, 101 F.4th 90, 94 (1st Cir. 2024). Where, as here, a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, the issue is whether plaintiffs have alleged facts sufficient to support personal jurisdiction. Ward v. AlphaCore Pharma, LLC, 89 F.4th 203, 209 (1st Cir. 2023). The Court may also consider facts proffered by defendant to the extent they are uncontradicted. A Corp. v. All American Plumbing, Inc., 812 F.3d 54, 58 (1st Cir. 2016).

### B. Application

In a federal question case such as this one, when the federal statute is silent on the availability nationwide service of process, plaintiff must both 1) satisfy the long-arm statute of the forum state and 2) show that jurisdiction adheres to the Due Process Clause of the Fourteenth Amendment of the United States Constitution. Motus, LLC v. CarData Consultants Inc., 520 F. Supp. 3d 87, 90-91 (D. Mass. 2021). Because the Court concludes that due process forbids the exercise of personal jurisdiction over defendant in this case, it declines to

consider whether such jurisdiction would be warranted under the Massachusetts long-arm statute.

Under the Due Process Clause, the Court's personal jurisdiction may be either general or specific. United States v. Swiss Am. Bank, 274 F.3d 610, 618 (1st Cir. 2001). General jurisdiction permits the Court to hear all claims against a defendant, while specific jurisdiction allows it to consider claims specifically related to defendant's contacts with the forum state.

**i. General Jurisdiction**

General jurisdiction exists when a corporate defendant's general contacts with the forum are so continuous and systematic as to render the defendant at home in that state. Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 924 (2011). A corporation is "at home" in the state in which it is incorporated as well as where it maintains its principal place of business. BNSF Ry. Co. v. Tyrrell, 581 U.S. 402, 413 (2017). In exceptional cases, a corporate defendant's operations in another forum may be sufficient to render it at home in that state as well. Id.

Plaintiffs do not allege that defendant is incorporated or has its principal place of business in Massachusetts. Rather, they suggest that the Court may exercise general personal jurisdiction over defendant based upon the admission that DDM

attributed, for tax purposes, 2.1% of its overall revenue as having come from Massachusetts in 2023. They rely on a recent case involving the same defendant, Rancourt v. Meredith Corp., No. 22-CV-10696-ADB, 2024 WL 381344 (D. Mass. Feb. 1, 2024), for the proposition that such a percentage of income is sufficient to establish general jurisdiction.

Rancourt considered whether the court could exert personal jurisdiction over a defendant for claims involving a mobile application which had over 55,000 users in Massachusetts and from which it earned over $66,000, and which used GPS technology to track individuals and present them with location-specific advertisements. The court found that those facts satisfied the Massachusetts long-arm statute which authorizes jurisdiction over an out-of-state defendant for out-of-state actions resulting in in-state injury when the defendant:

> regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth.

M.G.L. c. 223A §3(d). Plaintiffs here argue that, in finding the Rancourt defendant subject to the same section of the long-arm statute (§3(d)), the court in that case implicitly exercised general jurisdiction as well.

Plaintiffs' reliance on Rancourt is, however, misplaced. While plaintiffs assert that §3(d) applies only when general

jurisdiction exists, this Court has previously found that §3(d) may be applied to either general or specific jurisdiction. Barnes v. Merck & Co., 648 F. Supp. 3d 283, 289 (D. Mass. 2023) ("Courts in this district have . . . held that § 3(d) can be applied to general or specific jurisdiction."). In Rancourt, the court found that $66,000 in revenue was attributable to 55,000 Massachusetts users from which the claims arose. That was not a finding that the defendant was "at home" in Massachusetts, as the Due Process Clause requires to exercise general jurisdiction. Rather, it was a finding that the $66,000 in income satisfied the "substantial revenue" component of §3(d), which warranted the exercise of specific jurisdiction over claims related to that revenue.[1]

In contrast, the 2.1% of revenue cited by plaintiffs in this case was total company revenue, unrelated to specific income from digital newsletters and online videos. The Court concludes that such a generalized allegation does not establish continuous and systematic contacts sufficient to render DDM at home in Massachusetts. See Daimler AG v. Bauman, 571 U.S. 117, 139 (2014) (finding that no general jurisdiction over a defendant whose forum-state sales accounted for 2.4% of total revenue); BNSF Ry. Co. v. Tyrrell, 581 U.S. 402, 413 (2017)

[1] Rancourt did not discuss the Due Process requirements for general jurisdiction because plaintiff in that case argued only for specific jurisdiction over the defendant. Rancourt, 2024 WL 381344 at 6, n. 11.

(finding that employing fewer than 5% of its workforce and generating less than 10% of its revenue in the forum state did not render the defendant "at home."). The Court therefore concludes that it cannot exercise general personal jurisdiction over defendant.

**ii. Specific Jurisdiction**

Specific jurisdiction requires that 1) the defendant's forum-state contacts represent that it has purposefully availed itself of the privilege of conducting activities in the subject state, 2) the underlying litigation arises out of, or is related to, those contacts and 3) the exercise of specific jurisdiction is reasonable. Sawtelle v. Farrell, 70 F.3d 1381, 1389 (1st Cir. 1995). All three requirements must be met to establish specific jurisdiction. Scottsdale Cap. Advisors Corp. v. The Deal, LLC, 887 F.3d 17, 20 (1st Cir. 2018).

The analysis of specific jurisdiction in this case focuses on the first of the three factors. Purposeful availment must be both voluntary and foreseeable. Kuan Chen v. United States Sports Acad., Inc., 956 F.3d 45, 59 (1st Cir. 2020). Voluntariness requires that the contacts with the forum state arise proximately from defendant's own actions. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985). Foreseeability depends upon whether those contacts are of such a nature that defendant could reasonable anticipate being haled into the

forum-state court. Phillips v. Prairie Eye Ctr., 530 F.3d 22, 28 (1st Cir. 2008). The mere existence of a nationally accessible website, without more, is insufficient to show purposeful availment. Id.

Plaintiffs have failed to establish purposeful availment. First, it is unclear whether defendant's contacts with Massachusetts should be considered voluntary. Plaintiffs allege that defendant's awareness of Massachusetts web traffic and newsletter recipients constitutes minimal contacts with the state. Even if true, however, it stretches credulity to suppose that such contacts were proximately caused by defendant. Defendant's conduct is limited to hosting websites accessible to the residents of Massachusetts, allowing those residents to sign up for a free newsletter and sending that newsletter to their email addresses. It is not at all clear that such conduct constitutes voluntary contacts with the Commonwealth of Massachusetts even if DDM is aware that some web traffic originates there.

Furthermore, even if such contacts were voluntary, it cannot be assumed that DDM could therefore reasonably anticipate being haled into court in Massachusetts. Plaintiffs have not alleged that DDM actively or purposefully directed any activity to Massachusetts. Indeed, they have alleged only that DDM sends its free, digital newsletter directly to Massachusetts

residents. The same can be said for DDM's interactions with visitors from every other state. See Cossaboon v. Maine Med. Ctr., 600 F.3d 25, 36 (1st Cir. 2010); Frawley v. Nexstar Media Grp., Inc., No. 1:23-CV-10384-AK, 2023 WL 6065768, at *6 (D. Mass. Sept. 18, 2023). To exercise jurisdiction over DDM under such circumstances would allow every other state to do the same and would "overwhelm constitutional limitations on the exercise of personal jurisdiction." Kuan Chen, 956 F.3d at 60 (1st Cir. 2020). The Court concludes that DDM has not purposefully availed itself of the privilege of conducting activities in Massachusetts.

Once again, plaintiffs' reliance on Rancourt is misplaced. In that case, the defendants contacts with Massachusetts users included GPS tracking, location-based advertising and state-based revenue generation. Such contacts were both related to the claims at issue and sufficient to establish purposeful availment. In contrast, and as explained above, the revenue cited by plaintiffs in this case is an estimate of total company revenue attributable to Massachusetts users for tax purposes and unrelated to the claims at issue. The newsletters and web traffic are insufficient to establish either voluntariness or foreseeability. The Rancourt decision does not therefore support a finding of specific jurisdiction in this case.

**ORDER**

For the forgoing reasons, defendant's motion to dismiss for lack of jurisdiction (Docket No. 18) is **ALLOWED** and the case is **DISMISSED.**

**So ordered.**

Nathaniel M. Gorton
Nathaniel M. Gorton
Senior United States District Judge

Dated: February 6, 2026